UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL JORDAN, | ) | 1:05-CV-00002-AWI-SMS |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| v. | ) | PLAINTIFF'S MOTION FOR LEAVE TO |
| | ) | CONDUCT DISCOVERY (DOC. 10) |
| SUNRISE MEDICAL, INC. LONG | ) | |
| TERM DISABILITY PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(1) and 72-303.

I. <u>Background</u>

Plaintiff, a former employee of Defendant Sunrise Medical, Inc., sues pursuant to 29 U.S.C. § 1132(a)(1)(B) (ERISA) for wrongfully withheld disability benefits. He alleges that he was and is a qualified participant in and beneficiary of Defendant Sunrise Medical, Inc.'s long-term disability plan. Defendant Aetna Insurance Company is the issuer of the policy that funded the plan as well as the administrator responsible for claims review and determination. The parties have agreed that the applicable standard of review of the administrator's denial of

the claim is de novo.[1]

Plaintiff filed his motion on April 29, 2005; Defendant filed opposition on May 6, 2005; and the parties filed a joint statement re: discovery dispute on May 18, 2005. Pursuant to the parties' agreement, the matter was submitted to the Court for decision on the papers.

II. Analysis

   A. Scope of Review

Where the review is de novo, it has been held that a district court that had granted summary judgment for the plan erred in failing to consider evidence that was outside the administrative record (a new diagnosis, not available during the ERISA plan's determination, that arguably would have fit within the definition of a disability covered under the plan). Mongeluzo v. Baxter Travenol Disability Benefit Plan, 46 F.3d 938, 943-44 (9th Cir. 1995). The district court had declined to consider the evidence because it decided that the administrative record had been sufficiently developed. In Mongeluzo, the Court of Appeal agreed with the Third, Fourth, Seventh, Eighth, and Eleventh Circuits that new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment. Id. at 943-44. It held that the district court must exercise its discretion to allow evidence not before the plan administrator only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision. Id. In Mongeluzo, the

---

[1] The basis for the stipulation is not set forth.

2

1  district court had applied too narrow a definition to the plan
2  term "mental illness," where the plan excluded benefits for
3  mental illness; the term was ambiguous, and ambiguities were to
4  be resolved in favor of the insured. The plaintiff insured had
5  offered extra-record evidence that his condition was later
6  diagnosed as an arguably physical condition (chronic fatigue).
7  The Court of Appeals held that a broader definition of the plan
8  term required re-evaluation of the evidence; the evidence of
9  chronic fatigue syndrome was a new explanation for the insured
10 employee's disability and had to be considered. Id. at 944. The
11 Court in Mongeluzo emphasized that the change in the analysis of
12 the legal definition required a re-evaluation of the evidence;
13 additional evidence should not be taken merely because new
14 evidence not presented to the plan had come up. Id. The court
15 agreed with the majority of circuits that new evidence may be
16 considered under certain circumstances to enable the full
17 exercise of informed and independent judgment. Id. at 943.
18     Thus, contrary to Defendants' contention here, the fact that
19 the parties have stipulated to de novo review does not by itself
20 render irrelevant or immaterial consideration of extra-record
21 evidence.
22         B. Scope of Discovery in De Novo Review Cases
23     In cases using de novo review, the question on the merits is
24 whether the claimant is disabled under the terms of the plan. In
25 Mongeluzo, the court appeared to approve the majority rule, by
26 citing Quesinberry v. Life Ins. Co. of North America, 987 F.2d
27 1017, 1025 (4th Cir. 1993), to the effect that in these cases, the
28 court in its discretion may consider extra-record evidence only

3

if good cause exists, consisting of exceptional circumstances, including things such as the following:

    1) claims involving complex medical questions;

    2) claims involving issues regarding the credibility of medical evidence;

    3) issues regarding the adequacy of the administrative record (such as situations involving only very limited administrative review procedures with little or no evidentiary record);

    4) necessity of evidence regarding interpretation of the plan terms as distinct from specific historical facts;

    5) instances where the payor and administrator are the same entity, and the court is concerned about impartiality;

    6) claims that would have been insurance contract claims prior to ERISA (i.e., where the court traditionally considers extra-record evidence in deciding issues of construction, etc.);

    7) circumstances where there is additional evidence that the claimant could not have presented in the administrative process. Quesinberry, id. at 1027.

In Waggener v. Unum Life Insurance, 238 F.Supp.2d 1179 (S.D.CA 2002), the parties agreed that the standard of review was de novo. The court concluded that evidence of a plan administrator's conflict of interest is relevant to the question of what extra-record evidence, if any, the district court will consider in conducting de novo review. In that case the defendant insurer both funded the plan through the policy and reviewed and determined claims. The court disallowed discovery of evidence regarding general claims handling information; it allowed

1 discovery of information relatively directly related to the
2 plaintiff's disability, including the following:
3        1) information necessary to demonstrate the manner in, or
4 extent to which, the conflict of interest (based on the
5 defendant's position as both insurer and administrator) affected
6 the decision making process;
7        2) information necessary to address any shortcomings in the
8 record or decision making process caused by the conflict of
9 interest; and
10       3) information regarding the independence or neutrality of
11 the physicians used by the plan for medical opinions relative to
12 the plaintiff's disability claim.
13       The court reasoned that this information was discoverable
14 because it was reasonably related (relevant) to the claims and
15 defenses in the case within the meaning of Fed. R. Civ. P.
16 26(b)(1), and it might lead to evidence that the court might
17 permit to be admitted at the time of summary judgment or trial.
18 The information was directed toward determining whether the
19 administrative record was complete or should be supplemented. In
20 light of the governing ERISA policies of 1) increasing the
21 likelihood of beneficiaries's receipt of full benefits, and 2)
22 maintaining premium costs of the system at a reasonable level,
23 the court required the discovery to be carefully tailored to the
24 issues raised in the case (there, the need to demonstrate
25 conflict of interest that actually required introduction of
26 additional evidence). Id. at 1185-86. The court noted that an
27 administrator's inconsistent treatment of the claim, inconsistent
28 reasoning, inadequate explanations, and repeated hiring of the

5

same experts whose opinions were credited over those of the treating physicians were factors that could indicate that a conflict of interest affected the defendant's decision on benefits. Id. at 1187.[2]

In the case before the Court, the district judge will have to come to a fully informed and independent judgment regarding the question of whether the Plaintiff was entitled to benefits. Part and parcel of the decision at either summary judgment or trial will be whether or not to exercise discretion to allow the introduction of evidence outside the administrative record. There is some indication of a potential conflict of interest because the plan administrator and insurer are the same entity. As to the adequacy of the record, the administrator's review procedures themselves or the extent of compliance with the procedures, and the neutrality of the medical evaluators, Plaintiff has not pointed to any evidence in the administrative record itself that specifically raises any issue. There is a logical possibility at this early stage of discovery that such issues exist, but nothing more. Without knowledge of what is in the record that apparently was produced to Plaintiff in April, (Sched. Conf. Order at 4), it is difficult carefully to tailor the discovery to issues actually raised in the case. However, at this stage, the Court is not

---

[2] Other material evidence includes an administrator's failure to follow its internal procedures for providing claimants with claim-filing documents, notice of denial, and/or review thereof; lack of adequate dialogue; an unfair review procedure (reviewers being given only poorly organized, raw data from the actual treating physicians but full reports from examining physicians selected by the plan); intent on the part of the administrator to deny the claim; and the administrator's failure to attend to fiduciary obligations. See Friedrich v. Intel Corp., 181 F.3d 1105, 1109-10 (9th Cir. 1999) (holding that where the administrator had discretion to determine claims, the trial court did not err in concluding that a conflict of interest existed and reviewing the claims decision de novo, and further did not err in admitting additional medical evidence to supplement the inadequate medical record resulting from the unfair claims procedure).

considering whether Plaintiff has demonstrated a conflict of interest, inadequacy of the record or procedures, or partiality of the medical evaluators; rather, the Court is considering only the scope of discovery that is relevant to a claim or defense or to the subject matter of the action. Use of the approach formulated in <u>Waggener</u> is appropriate.

With the foregoing in mind, the Court concludes that some of the requested discovery should be permitted. The Court notes that Defendants have represented that they have provided Plaintiff with a complete copy of the administrative record in this case. (Opp. to motion at 3.) Thus, in all instances, the discovery to be provided is limited to matters that are in addition to the administrative record already provided to Plaintiff by Defendant.

### C. <u>Interrogatories</u>

Plaintiff seeks the identities of persons or entities participating in the evaluation of Plaintiff's claim or appeal, including persons or entities who are currently Aetna employees as well as those who are not. This information would relate to the manner or extent of any conflict of interest; further, it would bear on the adequacy of the record because it would indicate whether anyone who participated in the evaluation was not included in the administrative record. It is not tangential, but rather is basic information of the sort that is necessary to demonstrate the manner and extent of a conflict or the inadequacy of the record or decision making process. A review of the cases shows that the administrative record often consists of less than the full administrative file, so it seems premature to conclude that the administrative record would necessarily contain all this

information. As Plaintiff argues, if all evaluators are identified in the record, Defendants may easily indicate that such is the case.

With respect to those participating in Plaintiff's evaluation, Plaintiff seeks information regarding those who were independent contractors, such as the number of times of use of contractors and the amount of compensation paid on each occasion. This information would relate to the independence or neutrality of the physicians and medical experts. This type of information was allowed in <u>Waggener</u>. Plaintiff should provide this information limited to calendar years 2001 through 2004.

Thus, the information sought in Interrogatories identified as 1 through 4 in Plaintiff's motion should be discoverable as limited above.

### D. Document Requests

The administrative record apparently summarizes or narrates a surveillance video, but the video itself is not in the record. Request 5 is for "[d]ocuments, including the video tape itself or its functional equivalent, which reflect or relate to surveillance of Mr. Jordan." Any such documents could relate to the conflict of interest, the adequacy of the record, and the adequacy of the decision making process; they appear to be directly related to Plaintiff's disability and would be central to an evaluation of the disability. They thus are the sort of documentation that would be necessary to demonstrate a conflict or address deficiencies. This documentation was permitted in <u>Waggener</u>. The Court will permit the discovery.

Request 6 is for any other documents which refer or relate

8

to Plaintiff and which were not contained within the administrative record already provided. This request is very broadly stated as to source and subject. The Court will grant discovery of any other documents referring or relating to Plaintiff that are in the possession or files of either Defendant and which relate to Plaintiff's disability or claim. As limited, such documents relate to information that could be useful to demonstrate conflict or address the adequacy of the record and the process.

Plaintiff requests claims guidelines from January 1, 2001, to the present referring to various topics. The complaint reflects that the action of which Plaintiff complains, namely, the termination of the benefits, which occurred on August 5, 2003. To the extent that the Court permits discovery of claims guidelines, discovery will be limited to any guidelines that were in effect as of the date of termination of benefits.

Claims guidelines employed in Plaintiff's case, and the extent to which Defendant Aetna adhered to those guidelines in Plaintiff's case, relate directly to the adequacy of the procedure used to determine Plaintiff's claim. They may also bear on conflict of interest and neutrality of evaluators, depending on the subject of the guideline. It appears from the joint stipulation that surveillance, personal interview, investigation, conditions of or injuries to the back, effects of medication, vocational rehabilitation, transferable skills, vocational analysis, and medical consultants were subjects, procedures, and phenomena involved in the evaluation of his claim. Thus, the Court will grant discovery of guidelines in existence on or after

1  December 2001 and until August 5, 2003, relating to physical
2  ailments with respect to investigations of the duties of
3  Plaintiff's occupation, surveillance, independent medical
4  examinations or medical documentation reviews, selection and
5  retention of physicians to conduct such exams and reviews,
6  internal evaluation of medical documentation, conditions of or
7  injuries to the back, effects of medication, requesting
8  additional or supplemental medical or vocational information,
9  clinical referral/reviews, sedentary work, administrative appeals
10 of claim determinations, retention of outside consultants used in
11 Plaintiff's case, and responses to claimants' requests for file
12 documentation.
13      Documents not already in the administrative file that refer
14 or relate to any of Plaintiff's treating physicians, including
15 Drs. Blair, Cantrell, Fujihara, Glenn, Lozano, and Watson could
16 relate to the manner or extent of any conflict, the adequacy of
17 the record or the process, and the independence or neutrality of
18 the medical evaluators. This matter was permitted to be
19 discovered in Waggener. The Court will permit this discovery.
20      Plaintiff's request for guidelines regarding responses to
21 complaints to governmental agencies such as the California
22 Department of Insurance is very broad and as formulated does not
23 appear to seek information useful to demonstrate a conflict,
24 address the adequacy of the record or the decision making
25 process, or demonstrate a lack of neutrality of physicians who
26 rendered a medical opinion. Discovery as to this is denied.
27      The scheduling conference order (at 3) indicates that
28 Defendants contend that "based upon a review of plaintiff's

medical records, vocational rehabilitation and evaluations, investigations contracted by Aetna, medical consultant reviews, independent vocational specialist reviews, and labor market surveys, plaintiff was not disabled pursuant to the terms of the Sunrise Plan and was able to work in a reasonable occupation." Discovery of claims guidelines on labor market surveys thus will be granted.

It does not appear how guidelines regarding social security disability are pertinent. Discovery as to these guidelines is denied.

Documents reflecting the definition of "disability" as used in the applicable plan appear to be discoverable because the construction of a key plan term is within the Court's scope of review. Discovery of such documents is granted, to include those in effect from January 1, 2001, through August 2003.

IT IS SO ORDERED.

**Dated:    June 1, 2005**                      /s/ **Sandra M. Snyder**
icido3                                          UNITED STATES MAGISTRATE JUDGE